

**FILED**

DEC 0 7 2020

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

IN THE UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF OHIO
~~EASTERN~~ DIVISION
*WESTERN*

STEVEN DAGUSTINO, et al.,

    Plaintiffs,

        v.                      Case No. 3:20-cv-01375

MIKE DEWINE, et al.,           Judge James G. Carr

    Defendants.             Magistrate Judge James R. Knepp, II

---

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND

## MEMORANDUM IN SUPPORT

---

Pursuant to Fed. R. Civ. P. 65, Plaintiffs respectfully move this Honorable Court prohibiting the Defendants, and their subordinates, from depriving Plaintiffs of their Constitutionally protected rights.

Plaintiffs pray that this Honorable Court:

1) Order Defendants to enforce all current social distancing guidelines as their emails, policies, and procedures have stated;

i

2)  Order Defendants to enforce the wearing of masks for all staff, volunteers, contractors, and inmates as their emails, policies, and procedures have stated;

3)  Order Defendants to daily refill the liquid hand-soap dispensers located in the inmate restrooms;

4)  Order Defendants to allow Plaintiffs access to an inexpensive digital camera or disposable cameras to document conditions of confinement and policy enforcement violations currently in existence for the purpose of discovery;

5)  Order any other just relief this Honorable Court deems necessary to ensure the status quo.

# TABLE OF CONTENTS

Page(s)

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND**

**MEMORANDUM IN SUPPORT** .................................................................... i

**TABLE OF CONTENTS** ........................................................................... iii

**TABLE OF AUTHORITIES** ....................................................................... iv

**MEMORANDUM IN SUPPORT** ................................................................. 1

**I. Incorporation of Amended Complaint** ................................................. 1

**II. Law and Argument** .......................................................................... 1

   **A. Legal Standard for Review** .......................................................... 1

      **1. Likelihood of Success** .............................................................. 2

      **2. Irreparable Harm** ................................................................... 14

      **3. Substantial Harm to Others Merged with Public Interest** ............ 14

      **4. 18 U.S.C. § 3626 Considerations** ............................................. 15

**III. Conclusion** ................................................................................. 16

**VERITY** ......................................................................................... 18

**CERTIFICATE OF SERVICE** ................................................................ 19

## TABLE OF AUTHORITIES

Page(s)

**Cases**

Am. Civil Liberties Union Fund of Mich. v. Livingston County, 796 F.3d 636 .................. 1, 2

Bays v. City of Fairborn, 668 F.3d 814 ................................................................................ 1

Bell v. Wolfish, 441 U.S. 520 (1979)................................................................................... 7

Brown v. Plata, 563 U.S. 493 (2011) ........................................................................... 2, 6, 7

Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535............. 2

Cristian A.R. v. Decker, No. CV 20-3600, 2020 U.S. Dist. (D.N.J. Apr. 12, 2020) ............... 15

Cruz v. Beto, 405 U.S. 319 (1972) ....................................................................................... 7

Dominguez c. Corr. Med. Servs., 555 F.3d 543 (6th Cir. 2009) ......................................... 4

Estelle v. Gamble, 429 U.S. 97 (1976)............................................................................. 2, 9

Farmer v. Brennan, 511 U.S. 825 (1994)................................................................... passim

Flanory v. Bonn, 604 F.3d 249 (6th Cir. 2010) ................................................................. 2

G & V Lounge Inc. v. Mich. Liquor Control Comm., 23 F.3d 1071 (6th Cir. 1994). ........... 15

Helling v. Mckinney, 509 U.S. 25 (1993) .................................................................. 3, 4, 13

Hudson v. McMillian, 503 U.S. 1 (1992) ......................................................................... 13

Hutto v. Finney, 437 U.S. 678 (1978).......................................................................... 5, 7

Liberty Coins, LLC v. Goodman, 748 F.3d 682 ................................................................ 1

Malam v. Adducci, 452 F. Supp. 3d 641 (E.D. Mich. 2020) ............................................ 15

Mandel v. Doe, 888 F.2d 783(11th Cir. 1989) ................................................................ 12

McNeilly v. Land, 684 F.3d 611 ........................................................................................ 2

Nken v. Holder, 556 U.S. 418 (2009)................................................................ 14, 15

Obama for Am. v. Husted, 697 F.3d 423............................................................. 1

Overstreet v. Lexington-Fayette Urban Cty. Gov't, 305 F.3d 566 .......................... 1

Palacio v. Hofbauer, 106 F.App'x 1002 (6th Cir. 2004) ...................................... 3

Perez v. Adducci, No. 20-10833, 2020 U.S. Dist. LEXIS 81912, 2020 WL 2305276 (E.D.

    Mich. May 9, 2020)................................................................................. 15

Pursuing America's Greatness v. Fed. Election Comm'n, 831 F.3d 500, 512 (D.C. Cir. 2016)

    ............................................................................................................. 15

Santiago v. Ringle 734, F.3d 585 (6th Cir. 2013)................................................. 4

Scicluna v. Wells, F.3d 441 (6th Cir. 2003)........................................................ 13

Stefan v. Olson, 497 F.App'x 568 (6th Cir. 2012) ............................................... 3

Talal v. White 403 F.3d 423 (6th Cir. 2005) ....................................................... 3

Terrance v. Northville Reg'l Psychiatric Hosp., 286 F.3d 834 (6th Cir. 2002).......... 10, 11, 13

Villegas v. Metro. Govt. of Nashville, 709 F.3d 563(6th Cir. 2013). ....................... 4

Whitley v. Albers, 475 U.S. 312 (1986)............................................................. 5

Wilson v. Seiter, 501 U.S. 294 (1991)............................................................... 13

### Statutes

18 U.S.C. § 3626 ....................................................................................... 1, 15

Ohio Rev. Code Ann. § 3707.21 ...................................................................... 12

### Other Authorities

Eighth Amendment.....................................................................................passim

Fourteenth Amendment ................................................................................ 14

Merriam-Webster's Dictionary of Law .............................................................. 6

## MEMORANDUM IN SUPPORT

### I. Incorporation of Amended Complaint

Plaintiffs incorporate their verified AMENDED COMPLAINT FOR MONEY

DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF ("AMENDED

COMPLAINT"), its attached Exhibits, and its attached Declarations, as if fully stated herein.

### II. Law and Argument

### A. Legal Standard for Review

"A district court must balance four factors in determining whether to grant a preliminary

injunction: '(1) whether the movant has a strong likelihood of success on the merits; (2) whether

the movant would suffer irreparable injury absent the injunction; (3) whether the injunction

would cause substantial harm to others; and (4) whether the public interest would be served by

the issuance of an injunction.'" *Am. Civil Liberties Union Fund of Mich. v. Livingston County*,

796 F.3d 636, 642 (6th Cir. 2015) (quoting *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th

Cir. 2012)). "These factors are not prerequisites, but are factors that are to be balanced against

each other." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir.

2002). However, "the likelihood of success on the merits often will be the determinative factor."

*Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014) (quoting *Obama for Am. v.

Husted*, 697 F.3d 423, 436 (6th Cir. 2012)).

Additionally, the PLRA imposes restrictions on the Court's ability to grant injunctive

relief. Any such relief must be (1) "narrowly drawn," (2) "extend no further than necessary to

correct the harm the court finds requires preliminary relief," and (3) "be the least intrusive means

necessary to correct the harm." 18 U.S.C. § 3626(a)(2). Importantly, courts must give

"substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity." *Id* Preliminary relief relating to prison conditions "shall automatically expire on the date that is 90 days after its entry, unless the court makes findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period." *Id.*

"[T]he party seeking a preliminary injunction bears the burden of justifying such relief." *Livingston County*, 796 F.3d at 642 (quoting *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012)); see also *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 546 n.2 (6th Cir. 2007) ("[I]n seeking a preliminary injunction, a federal plaintiff has the burden of establishing the likelihood of success on the merits.").

### 1. Likelihood of Success

Corrections officials have a constitutional obligation to protect incarcerated individuals from a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Indeed, under the Eighth Amendment, prison officials "must provide humane conditions of confinement; … must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates[.]" Id. At 832 (internal quotation marks omitted). This obligation also requires corrections officials to address prisoners' serious medical needs – including needs far less dire than those at stake here. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Brown v. Plata*, 563 U.S. 493, 531-32 (2011); *Flanory v. Bonn*, 604 F.3d 249, 255 (6th Cir. 2010) (prison officials violated Eighth Amendment for failure to provide prisoner with toothpaste for 337 days, creating future health risk). Thus, for example, the Sixth

Circuit has found Constitutional issues with exposing a prisoner to environmental tobacco smoke when that exposure "causes [plaintiff] sinus problems and dizziness," *Talal v. White* 403 F.3d 423, 427 (6th Cir. 2005); see also *Helling v. Mckinney*, 509 U.S. 25, 28, 35 (1993) (prisoner stated a valid Eight Amendment claim against prison officials who require him to share cell with a prisoner who exposed him to high levels of second-hand smoke); *Palacio v. Hofbauer*, 106 F.App'x 1002, 1005 (6th Cir. 2004) (exposure to smoke violates Eighth Amendment when a prisoner has "a medical condition that is exacerbated by" second-hand smoke and the smoke "bothers" other prisoners).

This obligation requires corrections officials to protect incarcerated people from infectious diseases like COVID-19; officials may not wait until someone tests positive for the virus and an outbreak begins. *McKinney*, 509 U.S. at 33-34 ("That the Eighth Amendment protects against future harm to inmates is not a novel proposition … It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them"); *Stefan v. Olson*, 497 F.App'x 568, 577 (6th Cir. 2012) (the proposition that "the Eighth Amendment protects against future harm to inmates is not a novel proposition."); *See also Farmer*, 511 U.S. at 833 ("[H]aving stripped [prisoners] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." By then it is too late. That one individual would have almost certainly infected untold numbers of people before displaying symptoms.

Prison officials violate this affirmative obligation by showing "deliberate indifference" to the substantial risk of serious harm. *Farmer*, 511 U.S. at 828. "Deliberate indifference has two components to it: objective and subjective," *Villegas v. Metro. Govt. of Nashville*, 709 F.3d 563,

3

568 (6th Cir. 2013) "[T]he objective component ... is met upon a showing that a detainee faces a

substantial risk of serious harm and that such a risk is one that society chooses not to tolerate."

*Id.* At 569. The subjective component is satisfied when an official has "(1) subjectively

perceived facts from which to infer substantial risk to the prisoner, (2) did in fact draw the

inference, and (3) then disregarded that risk." *Santiago v. Ringle* 734, F.3d 585, 591 (6th Cir.

2013) (citations and internal quotation marks omitted). Such indifference may be "infer[red]

from circumstantial evidence, including 'the very fact that the risk was obvious,' that a prison

official knew of a substantial risk." *Id* (quoting *Dominguez c. Corr. Med. Servs.*, 555 F.3d 543,

550 (6th Cir. 2009)).

To satisfy the objective prong, an inmate must show "that he is incarcerated under

conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the

subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health

or safety." Id. at 837. "[I]t is enough that the official acted or failed to act despite his knowledge

of a substantial risk of serious harm." Id. at 842. "It is, indeed, fair to say that acting or failing to

act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent

of recklessly disregarding that risk." Id. at 836. "[P]rison officials who actually knew of a

substantial risk to inmate health or safety may be found free from liability if they responded

reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

With respect to impending infectious disease like COVID-19, deliberate indifference is

satisfied when corrections officials "ignore a condition of confinement that is sure or very likely

to cause serious illness and needless suffering the next week or month or year," even when "the

complaining inmate shows no serious current symptoms." *Helling*, 509 U.S. at 33, 36 (holding

that a prisoner "states a cause of action ... by alleging that [corrections officials] have, with

4

deliberate indifference, exposed him to conditions that pose an unreasonable risk of serious damage to future health"); *see also Hutto v. Finney*, 437 U.S. 678, 682-685 (1978) (recognizing the need for a remedy where prisoners were crowded into cells and some had infectious diseases).

> Although we have never paused to explain the meaning of the term "deliberate indifference," the case law is instructive. The term first appeared in the United States Reports in Estelle v. Gamble, 429 U.S. at 104, and its use there shows that deliberate indifference describes a state of mind more blameworthy than negligence. In considering the inmate's claim in Estelle that inadequate prison medical care violated the Cruel and Unusual Punishments Clause, we distinguished "deliberate indifference to serious medical needs of prisoners," ibid., from "negligen[ce] in diagnosing or treating a medical condition," id., at 106, holding that only the former violates the Clause. We have since read Estelle for the proposition that Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319, 89 L. Ed. 2d 251, 106 S. Ct. 1078 (1986).

> While *Estelle* establishes that deliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. *Farmer*, 511 U.S. at 835.

In the instant case, there is no doubt that COVID-19 has been shown as an objectively substantial risk of serious harm and that each Defendant "(1) subjectively perceived facts from which to infer substantial risk to the prisoner, (2) did in fact draw the inference, and (3) then disregarded that risk. Plaintiffs have provided ample evidence of this in their AMENDED COMPLAINT. Examples of this evidence as it relates to numbers 1 and 2 above are: Defendant DeWine's Executive Order referenced at AMENDED COMPLAINT ¶ 62 and its Exhibit L, Defendant DeWine's Twitter feed referenced at AMENDED COMPLAINT ¶ 76, Defendant Chambers-Smith's email dated March 10, 2020 referenced at AMENDED COMPLAINT ¶ 67 and its Exhibit I, Defendant Chambers-Smith's Director's Order 20-01 on March 16, 2020 attached as Exhibit BK, Defendant Wainwright's numerous emails to inmates and answers to informal complaints and grievances. See AMENDED COMPLAINT ¶ 75, 94 and Exhibits T and

W and attached Exhibit BL, and Defendant Eddy is an M.D. and his position as Chief Medical Officer of ODRC referenced at AMENDED COMPLAINT ¶ 12. Since numbers 1 and 2 above are not in doubt, the only remaining questions are: was their response reasonable? and how did they disregard that risk?

An understanding of the word reasonable is necessary to answer these, both from an objective and subjective point of view. Reasonable is defined as "**1 a :** being in accordance with reason, fairness, duty, or prudence **b :** of an appropriate degree or kind **c :** supported or justified by fact or circumstance <a ~ belief that force was necessary for self-defense>". *Merriam-Webster's Dictionary of Law* (2016, p. 402). Here, the objective facts about the substantial risk of serious harm are well documented, and the Defendants did subjectively perceive these facts from which to infer substantial risk to the Plaintiffs, did in fact draw the inference, and then disregarded that risk. This is evinced by their own words, actions, and omissions. Since the objective facts and the subjectively perceived are identical in this case, it is only a matter of examining these words, actions, and omissions in light of the perceived facts that will determine if they are reasonable.

Marion Correction Institution is overcrowded in violation of Eighth Amendment's prohibition on cruel and unusual punishments and the consequence of overcrowding is increased, substantial risk for transmission of infectious diseases.

> In 2006, then-Governor Schwarzenegger declared a state of emergency in the prisons, as " 'immediate action is necessary to prevent death and harm caused by California's severe prison overcrowding.' " The consequences of overcrowding identified by the Governor include " 'increased, substantial risk for transmission of infectious illness' *Brown v. Plata*, 563 U.S. 493, 503, 131 S. Ct. 1910, 1924 (2011).

> A prison that deprives prisoners of basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society.
> If government fails to fulfill this obligation, the courts have a responsibility to remedy the resulting Eighth Amendment violation. See *Hutto v. Finney*, 437 U.S. 678,

687, n. 9, 98 S. Ct. 2565, 57 L. Ed. 2d 522 (1978). Courts must be sensitive to the State's interest in punishment, deterrence, and rehabilitation, as well as the need for deference to experienced and expert prison administrators faced with the difficult and dangerous task of housing large numbers of convicted criminals. See *Bell v. Wolfish*, 441 U.S. 520, 547-548, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). Courts nevertheless must not shrink from their obligation to "enforce the constitutional rights of all 'persons,' including prisoners." *Cruz v. Beto*, 405 U.S. 319, 321, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972) (per curiam). Courts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration. *Brown v. Plata*, 563 U.S. 493, 511, 131 S. Ct. 1910, 1928-29 (2011).

According to ODRC Director's Order 20-01, "the ODRC currently has a population of nearly 50,000 male and female inmates, the vast majority of whom, because of their close proximity and contact with each other in living/housing units and food halls, are especially vulnerable to contracting and spreading COVID-19; … the ODRC currently has limited housing capacity to isolate and quarantine inmates who present as symptomatic for, or test positive for, COVID-19." See attached Exhibit BK. On April 7, 2020 Defendant Chambers-Smith determined that COVID-19 had created an overcrowding emergency. For this declaration to be made, overcrowding must have already existed. Defendant DeWine signed a certified authorization declaring an overcrowding emergency approximately one week later. MCI remains overcrowded and A-Dorm still houses over the 64 person alleged design capacity. See *Taylor v. Perini*, 421 F. Supp. 740, 771 (N.D. Ohio 1976). This is not something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result, but is actually made up of acts and omissions with knowledge that harm will result, which is a higher standard than deliberate indifference requires.

What are reasonable actions with respect to one type of infectious disease is not necessarily a reasonable action for another type. Protocols and procedures exist within ODRC for many types of infectious diseases. Community-associated MRSA infections are contracted usually through skin-to-skin contact, and start as small skin infections that develop into deep

7

abscesses. Hygiene and sanitation procedures are reasonable measures, but limiting close proximity by social distancing and wearing masks would not be considered reasonable measures as they do not address the primary method of transmission. Blood borne pathogens, HIV/AIDS and Hepatitis C, would not require social distancing or masks as a reasonable action to prevent or contain the spread, but special sanitation procedures for cleanup are considered reasonable. Specifics on ODRC medical policies were not available to Plaintiffs. Plaintiffs requested the Pandemic Influenza Policy C-11 and SARS-Cov-2 policy. For SARS-CoV-2, Plaintiffs were informed that "we follow the CDC guidelines". See attached Exhibit BM. See AMENDED COMPLAINT ¶ 79.

In the instant case, the Defendants are fully aware that "COVID-19 is a respiratory disease that can result in serious illness or death, is caused by the SARS-CoV-2 virus, which is a new strain of coronavirus that had not been previously identified in humans and can easily be spread from person to person. The virus is spread between individuals who are in close contact with each other (within about six feet) through respiratory droplets produced when an infected person coughs or sneezes. It may be possible that individuals can get COVID-19 by touching a surface or object that has the virus on it and then toughing their own mouth, nose, or eyes." See Exhibits I, J, and L. Not only is this information considered to be an objective fact, the Defendants subjectively perceived these facts from which to infer substantial risk to the Plaintiffs, did in fact draw the inference, and then disregarded that risk. Defendant DeWine took this a step further by tweeting his belief that "COVID-19 is twice as contagious as the flu and 20 times more deadly." So, to be reasonable, Defendants protocols, procedures, policies, actions, and inactions must be consistent with the above, that COVID-19 is spread between individuals in close contact with each other through respiratory droplets. Contracting the disease from surfaces

8

is only considered a possibility, unlike spread between individuals, which is most probable. Finally, implementing policies and procedures that are not being enforced is equivalent to providing medical care that is "so cursory as to amount to no treatment at all". *Estate of Majors v. Gerlach*, 521 Fed. Appx. 533, 543 (6th Cir. Mich. July 28, 2020).

Defendants implemented a policy around March 10th, 2020 suspending all visiting, volunteers, and contractors. Essential contractors were allowed into the building. Essential was later defined in an email to include food service and medical contractors, but not contractors like AVI, the vending machine company. See AMENDED COMPLAINT ¶ 74. On March 11th, 2020, the Correctional Educational Program Director, Rhea Edmonds, sent an email informing inmates that all college classes and labs have been suspended until further notice. These steps seem reasonable as they limit the possible number of individuals who can bring the virus into the facility, but the policy was not strictly enforced. College classes, inclusive of the lab assistant and instructors were allowed to enter MCI and continue classes and labs until the end of Spring Break, March 27th. This decision cannot possibly be inferred as guided by health and safety of the contractors, inmates, staff, or community at large. This is another example of acts and omissions with knowledge that harm will result, which is a higher standard than deliberate indifference requires. Plaintiffs are not arguing that Defendants acts or omissions were for the very purpose of causing harm, but only with knowledge that harm will result. While *Estelle* establishes that deliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. *Farmer*, 511 U.S. at 835. The word use of the word 'or' between 'very purpose of causing harm' and 'with knowledge that harm will result' means that only one or the other needs to be true. Also "when the need for treatment is

obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989).

Defendants have implemented mandatory wearing of masks for all inmates, staff, and contractors. This is casually enforced. Staff will tell inmates to wear their masks in hallways, although sometimes not necessarily properly. But, staff routinely do not wear their masks properly, and sometimes not at all. This is prevalent, but not limited to, hallways and the café. The lack of enforcement of this policy evinces deliberate indifference on the part of Defendants Wainwright and Chambers-Smith.

Defendants have implemented a policy requiring social distancing between staff members. This is rarely enforced. Staff can be seen regularly with theirs masks below their nose, masks off, or masks properly worn, but less than six feet between them. The lack of enforcement of this policy evinces deliberate indifference on the part of Defendants Wainwright and Chambers-Smith. Even when informed of these violations through the grievance process, nothing has changed. It did not seem that anyone even reviewed the cameras to verify or dispute the complaint. See attached Exhibit BL.

Defendants implements a policy of inmates must sleep head-to-toe to allow for social distancing. This was only enforced on the first night of the policy. The lack of enforcement of this policy evinces deliberate indifference on the part of Defendants Wainwright and Chambers-Smith.

Defendants have continually notified inmates of the need to social distance, but have provided very little ability to do this. They know that the primary method of transmission is person to person in close proximity, but have not provided a method to accomplish this on a continual basis. Defendant Chambers-Smith claimed that "that's the one luxury we really don't have in the Department of Rehabilitation and Correction." See Exhibit AP. In an overcrowded facility such as MCI, this is very true. At the height of the outbreak at MCI in April, 2020, Defendants demonstrated their full understanding of social distancing within dorms and their ability to provide it by creating three dorms and the gymnasium as fully social distanced, at least 6 feet edge-to-edge between beds. They did this for the approximately

19% of inmates at MCI who tested negative for coronavirus Defendant Chambers-Smith even had discussions about building capacity at level 2 facilities and additional beds and locations around April 20. See AMENDED COMPLAINT ¶ 131. In late May, all dorms were changed to 6 feet center-to-center to accommodate social distancing, which is less space than they provided those who tested negative. This is yet another example of acts and omissions with knowledge that harm will result, which is a higher standard than deliberate indifference requires and/or "when the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989).

Defendants have implemented a policy requiring health screenings for individuals entering the facilities. See AMENDED COMPLAINT ¶ 74. This policy is not being strictly enforced. Several staff members of MCI, when asked, reported that some staff ask all questions, and some don't. A-Dorm has had several Corrections Officers work in the dorm with very noticeable symptoms that are to be screened, specifically coughing. See attached DECL. 20 This is yet another example of acts and omissions with knowledge that harm will result, which is a higher standard than deliberate indifference requires and/or "when the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989).

Based on Defendants own communications and policies, it is clear that their understanding of the substantial risk of serious harm is that COVID-19 is a respiratory disease that can result in serious illness or death, is caused by the SARS-CoV-2 virus, which is a new strain of coronavirus that had not been previously identified in humans and can easily be spread from person to person. The virus is spread between individuals who are in close contact with

each other (within about six feet) through respiratory droplets produced when an infected person coughs or sneezes. It may be possible that individuals can get COVID-19 by touching a surface or object that has the virus on it and then toughing their own mouth, nose, or eyes." Not only is this information considered to be an objective fact, the Defendants subjectively perceived these facts from which to infer substantial risk to the Plaintiffs, did in fact draw the inference, and then disregarded that risk. Many other policy implementations fall under the category of "may be possible" above. Although sanitation and hygiene are important, on the whole, and are part of the CDC guidance, they fall under the realm of possible; whereas, the guidance for masks, social distancing, overcrowding, limiting who may enter a facility, and screening fall under the category of "can easily be spread from person to person ... close contact". As such, the methods implemented under the realm of the possible do not factor into what are reasonable measures, nor are policies reasonable when they are consistently violated without consequence.

Defendants have violated state law and CDC guidance in regards to isolation and quarantine, and separation of those who are presumed positive or tested negative from those who have tested positive. See AMENDED COMPLAINT ¶¶ 146 and 147. See Exhibit AK.

> When cholera, yellow fever, diphtheria, scarlet fever, or other dangerous, contagious, or infectious disease appears in any state, county, or municipal benevolent or correctional institution, the superintendent or manager of the institution shall at once isolate the persons so affected and enforce sections 3707.01 to 3707.53 of the Revised Code, for the prevention of contagious diseases, and the rules and orders of the department of health to that effect.
> The trustees or managers of any benevolent or correctional institution may erect any necessary temporary building for the reception of the affected persons or for the detention of persons exposed to the listed diseases and may remove the persons to, and confine them in, the building.
> Ohio Rev. Code Ann. § 3707.21 (Page, Lexis Advance through File 53 of the 133rd (2019-2020) General Assembly)

This is yet another example of acts and omissions with knowledge that harm will result, which is a higher standard than deliberate indifference requires and/or "when the need for treatment is

obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002) quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989).

The case law is clear. Plaintiffs must show that Defendants acts and omissions involved a sufficiently culpable state of mind, defined as deliberate indifference.

> The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Wilson v. Seiter, 501 U.S. 294, 297 (1991)* (internal quotation marks, emphasis, and citations omitted). To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." Ibid.; see also id., at 302-303; *Hudson v. McMillian, 503 U.S. 1, 8 (1992)*, supra. In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety, *Wilson*, supra, 501 U.S. at 302-303; see also *Helling*, supra, 509 U.S. at 34-35; *Hudson v. McMillian*, supra, at 5; Estelle, supra, at 106, a standard the parties agree governs the claim in this case. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994).

Plaintiffs have clearly met this standard as Defendants have continually shown their state of mind through their communications, acts, and omissions. This case is distinguished from other cases within the 6th District and its sister courts in that in other cases the plaintiffs failed to properly show the state of mind of their respective defendants.

Accordingly, Defendants failure to take medically-required steps to prevent disease and death and resolve conditions of confinement issues like overcrowding and proper ventilation constitutes deliberate indifference. Their nominal gestures – as by sending directives to the prisoners to engage in social distancing where it is flatly impossible to do so, implementing policies that are not being followed by staff (e.g. mandatory wearing of masks, failure to follow screening protocols), or failing to relieve the overcrowded Marion Correctional Institutions' dorms and blocks – do not suffice. *See, e.g. Helling*, 509 U.S. at 33, 36; *Scicluna v. Wells*, F.3d 441, 446 (6th Cir. 2003) (denying qualified immunity for official that placed "a prisoner in need of urgent medical attention to a facility that the official knows is unable to provide the required treatment").

13

## 2. Irreparable Harm

Plaintiffs must "demonstrate that irreparable injury is likely in the absence of an injunction," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008, and that the injury is "both certain and immediate, rather than speculative or theoretical," *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991 Notably, "[w]hen constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012 *see also Overstreet v. Lexington-Fayette Urban Cty. Gov.*, 305 F.3d 566, 578 (6th Cir. 2002) noting that "a plaintiff can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights"); *Rhinehart v. Scutt, 509 F. App'x 510, 514 (6th Cir. 2013* (suggesting that an allegation of "continuing violation of . . . Eighth Amendment rights" gives rise to a finding of irreparable harm).

Here, Plaintiffs contend that Defendants violate Plaintiffs' Eighth and Fourteenth Amendment rights by incarcerating them in conditions that fail to adequately mitigate against the spread of a potentially fatal virus in the midst of a growing pandemic and in spite of their knowledge and ability to do so. There is currently no evidence the presence of antibodies guarantees immunity. See AMENDED COMPLAINT ¶ 169 and Exhibits M and BG.

## 3. Substantial Harm to Others Merged with Public Interest

The remaining factors, "harm to the opposing party and weighing the public interest[,] . . . merge when the Government is the opposing party," *Nken v. Holder*, 556 U.S. 418, 435, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009), because "the government's interest is the public

interest," *Malam v. Adducci, 452 F. Supp. 3d 641, 661 - 662 (E.D. Mich.
2020)* (quoting *Pursuing America's Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 512, 425
U.S. App. D.C. 31 (D.C. Cir. 2016) (citing *Nken*, 556 U.S. at 435)). This factor weighs in
Plaintiffs' favor for two reasons.

First, as discussed above, Plaintiffs face irreparable injury to their constitutional rights
absent an injunction and " it is always in the public interest to prevent the violation of a party's
constitutional rights." *G & V Lounge Inc. v. Mich. Liquor Control Comm.*, 23 F.3d 1071, 1079
(6th Cir. 1994).

Second, the public has a significant interest in avoiding serious illness or death. Indeed,
efforts to curb the spread of COVID-19—including implementing procedures to curb the spread
of COVID-19 within MCI—helps "flatten the curve," limit potential strain on healthcare
systems, and reduce the likelihood of death and long-term health complications. *See Perez v.
Adducci*, No. 20-10833, 2020 U.S. Dist. LEXIS 81912, 2020 WL 2305276, at *9 (E.D. Mich.
May 9, 2020) ("Society benefits by stemming the proliferation of COVID-19, thereby 'flattening
the curve,' preventing strain on medical centers and hospitals, and ultimately reducing death or
long-term injury from COVID-19-related lung damage."); *Cristian A.R. v. Decker*, No. CV 20-
3600, 2020 U.S. Dist. LEXIS 66658, 2020 WL 2092616, at *13 (D.N.J. Apr. 12, 2020)

## 4. 18 U.S.C. § 3626 Considerations

The requested relief is narrowly drawn, extends no further than necessary to correct the
harm the court finds requires preliminary relief, and is the least intrusive means necessary to
correct the harm. As such, the Plaintiffs have proposed relief that meets the requirements.

15

## III. Conclusion

Having met the legal requirements Pursuant to Fed. R. Civ. P. 65, Plaintiffs respectfully move this Honorable Court prohibiting the Defendants, and their subordinates, from depriving Plaintiffs of their Constitutionally protected rights.

Plaintiffs pray that this Honorable Court:

1)      Order Defendants to enforce all current social distancing guidelines as their emails, policies, and procedures have stated;

2)      Order Defendants to enforce the wearing of masks for all staff, volunteers, contractors, and inmates as their emails, policies, and procedures have stated;

3)      Order Defendants to enforce head-to-toe sleeping as their emails, policies, and procedures have stated;

4)      Order Defendants to daily refill the liquid hand-soap dispensers located in the inmate restrooms;

5)      Order Defendants to allow Plaintiffs access to an inexpensive digital camera or disposable cameras to document conditions of confinement and policy enforcement violations currently in existence for the purpose of discovery;

6)      Order any other just relief this Honorable Court deems necessary to ensure the status quo.

Respectfully Submitted,

Steven DAgustino, pro se

MCI A752784

940 Marion-Williamsport Rd.

P.O. Box 57

Marion, Ohio 43302-0057

Andre Stores, pro se

MCI A314976

940 Marion-Williamsport Rd.

P.O. Box 57

Marion, Ohio 43302-0057

Willis Williams, pro se

MCI A760782

940 Marion-Williamsport Rd.

P.O. Box 57

Marion, Ohio 43302-0057

Dated: 11-18-2020

## VERITY

Pursuant to 28 U.S.C. § 1746, we declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: *11-18-2020*

Steven DAgustino, pro se

MCI A752784

940 Marion-Williamsport Rd.

P.O. Box 57

Marion, Ohio 43302-0057


Andre Stores, pro se

MCI A314976

940 Marion-Williamsport Rd.

P.O. Box 57

Marion, Ohio 43302-0057


Willis Williams, pro se

MCI A760782

940 Marion-Williamsport Rd.

P.O. Box 57

Marion, Ohio 43302-0057

## CERTIFICATE OF SERVICE

We hereby certify that the forgoing PLAINTIFFS' MOTION FOR PRELIMINARY

INJUNCTION AND MEMORANDUM IN SUPPORT was placed in the mailbox, with proper

postage attached, at the prison for delivery to:

Tracy L. Bradford

Senior Assistant Attorney General

Criminal Justice Section

Corrections Litigation Unit

150 E. Gay Street, 16th Floor

Columbus, Ohio 43215

On: 11-18-2020

Executed On: 11-18-2020

Steven DAgustino, pro se

Andre Stores, pro se

Willis Williams, pro se

19